## FORT v. WILSON.

A land warrant possesses none of the qualities of negotiable paper, and is to be treated as a chattel only.

F. placed in the hands of S. two land warrants to be located, and took from him a receipt as follows: "Received, Lansing, August 31, 1852, from James Fort, land warrants Nos. 10,711 and 75,279, to be located upon the southeast quarter of section one, and upon the northeast quarter. of section twelve, in township 97, north of range four, west of the fifth principal meridian," which was signed by S.    Land warrant No. 10,711 was properly located in the name of F., on a part of the land.    The other warrant, No. 75,279, was assigned in blank, when delivered to S., who sold it to W.    On the 6th of October, 1852, W. located the warrant on a portion of the land described in the receipt of S.    The warrant was sold to W. for a valuable consideration, and without notice of the rights of F.    F. then filed his bill against W. to compel a conveyance of the land on which the warrant was located.

*Held*, 1. That W. could not hold the warrant as against F., were it now in his possession, and an action were instituted for it.

Fort v. Wilson.

2. That there was no trust between F. and W., and the warrant could not be traced into the land.

3. That W. was liable to F. for the value of the warrant, which might be recovered in this action.

*Appeal from the Jackson District Court.*

THIS is a bill in chancery to cause the respondent to convey to the complainant, the southeast quarter of section one, in township ninety-seven, north of range four, west of the fifth principal meridian, situated in the county of Alamakee, The bill alleges that James Fort placed in the hands of J. H. Skeel, land warrant No. 75,279, taking the following receipt: "Received, Lansing, August 31st, 1852, from James Fort, land warrants Nos. 10,711 and 75,279, to be located upon the southeast quarter of section one, and upon the northeast quarter of section twelve, in township No. 97, north of range four, west of the fifth principal meridian.

"J. H. SKEEL."

That warrant No. 10,711 was properly located in the name of Fort, but that Skeel had no authority to sell No. 75,279, but only to locate it. It appears, by a copy of the land office certificate, that this warrant was located upon the other tract of land named in Skeel's receipt, in the name of the respondent, on the 6th October, 1852; and that on the 7th October, 1852, Skeel sold this warrant to F. S. & D. S. Wilson. The warrant was issued to another person, and assigned in blank, as is usual.

*Burt & Barker*, for the appellant.

I. The warrant was not negotiable, and the plaintiff having never parted with his title, may follow it in whosesoever hands the same may be found. The warrant in law is real estate, and would be treated as such in the descent of property. The instructions of the department of the interior, expressly negatives all idea that land warrants are negotiable instruments. If custom among business men is referred to as making warrants negotiable, then we say that the taking of a guaranty from the seller—as is usual—and was

done in this case, rebuts the presumption of negotiability arising from custom. But custom has not, and could not, make warrants negotiable.

II. If the warrant is held to be personal property, and not as real estate, then we say that there was a wrongful conversion of the warrant, and the plaintiff may recover it from the possession of any person in whose hands he may find it; and if his property has been converted into land, he may recover the land. *Murray & Ogden* v. *Burling*, 10 Johns. 172; 8 Cow. 95; *Baker* v. *Wheeler*, 8 Wend. 505.

III. If we admit that Skeel sold the warrant to Wilson, who bought it in good faith, yet the title of the warrant would not pass to Wilson, as between him and the plaintiff; because the sale of the warrant by Skeel was a fraud, and would no more enable him to pass title to Wilson, than if he had stolen and undertaken to sell the plaintiff's horse. *Allison* v. *Malhhieu*, 3 Johns. 235; *Andrew* v. *Dieterich*, 14 Wend. 31; *Root* v. *French*, 13 Ib. 570; *Hitchcock* v. *Covill*, 20 Ib. 167; *Hoffman* v. *Carow*, 22 Ib. 285; *Acker* v. *Campbell*, 23 Ib. 372; *Robinson* v. *Dauchy*, 3 Barb. 20; 1 Hill, 311.

IV. Equity will consider that done which ought to be done: and that money is land, and *vice versa*, as equity may require. Another principle, equally undeniable, is, that "he who furnishes the purchase money is entitled to the land." *Jackson* v. *Steinburgh*, 1 Johns. Cases, 153; *Foot* v. *Tracey*, 1 Johns. 45; *Jackson* v. *Benson*, 11 Ib. 91; *Jackson* v. *Mills*, 13 Ib. 462; *Jackson* v. *Morse*, 16 Ib. 196; *Russell* v. *Allen*, 10 Paige, 249; Adams' Eq. chap. 4, 349; 1 Am. Lead. Cas. 544.

*David S. Wilson, pro se*, cited the following authorities: *Rossiter* v. *Rossiter*, 1 Am. Lead. Cas. 555; *Putnam* v. *Sullivan*, 4 Mass. 45; *Clement* v. *Leverett*, 12 N. Hamp. 317; *Bank of Limestone* v. *Penick*, 5 B. Monroe, 25; *Bank of Commonwealth* v. *Emry*, 2 Dana, 142; *Decatur Bank* v. *Spence*, 9 Ala. 800; *Goodwin* v. *McCoy*, 13 Ib. 271; *Hayt* v. *Seeley*, 18 Conn. 358; *Ferguson* v. *Childress*, 9 Humph.

382; *Stewart* v. *Donnelly*, 4 Yerger, 177; *Kesler* v. *Zimmerschitte*, 1 Texas, 50; *Root* v. *French*, 13 Wend. 570; *Goodman* v. *Harford*, 4 N. Hamp. 454; *Lane* v. *Borland*, 2 Shep. 77; Chit. on Cont. (6th Am. ed.) 685, note 1; *Lickbarrow* v. *Mason*, 2 Term R. 70; *Pierson* v. *Tom*, 1 Texas, 577; 1 Story's Eq. 119, 189; *Coles* v. *Anderson*. 8 Humph. 489; *Vere* v. *Lewis*, 3 D. & E. 182; *Griffith* v. *Reed*, 21 Wend. 502; *Kendall* v. *Galvin*, 15 Maine, 131; *Raborg* v. *Peyton*, 2 Wheat. 389; *Jones et al.* v. *Overstreet*, 4 B. Mon. 548.

WOODWARD, J.—The facts upon which the question of the case arises, are: The warrant was assigned in blank. Skeel was then the holder, under his receipt given to Fort; and Skeel sold to the Wilsons, for an adequate valuable consideration, they being purchasers without notice. And the main question is, whether the Wilsons can hold the warrant. We think they cannot. Much of the law in this, and similar subjects, is collected in 1 Am. Lead. Cas. 524 to 556, and other authorities are cited by the counsel. If this were commercial, negotiable, paper, there would be no question. Is it, then, to be treated as such, or as a chattel merely—a piece of property, in the more ordinary sense? We answer, as a chattel only. It possesses none of the qualities of negotiable paper. The law does not contemplate it as assignable by delivery, or blank indorsement. The law supposes every assignment to be filled and made complete. Act of Congress, March 22, 1852.

If a deed of conveyance, lease, bond, or other paper, were placed in the hands of an agent for a certain purpose, and to be delivered to a certain person, on the performance of some act, the name of the grantee, lessee, &c., being left blank for whatever cause, but to be filled up by the agent at the proper time; no one would contend that he could sell it to whomsoever he pleased, and fill up the blank with whatever name. The cases from New York, cited by counsel, if applicable, would seem to determine the point in favor of the appellee, for he was an innocent purchaser. The

points there held are these : 1. A fraudulent purchaser cannot hold against the vendor. 2. If the fraudulent vendee sell to a third person, "for a valuable consideration, without notice, the innocent purchaser shall hold." But every one of those cases, is one of a sale to a fraudulent party. And it is to this state of facts, that they apply the readily admitted doctrine, that if one of two innocent persons must suffer, by the act of another, it shall be he who put it in the power of another to do the wrong. This doctrine cannot be stated with its qualifications ; and stated in any general form, it is subject to much qualification. Thus, if I put my horse to agist, or for similar purposes, with another, by bailment, and he sell him, I, literally put it in his power to do a wrong, by selling him to a third and innocent person. But the power here given him, is a mere, a naked power, unac-companied by any authority, or right, or property. And it is apprehended that some of them, in some shape or degree, must accompany the power, in order to bind me ; and that the agent's or bailee's act, in violation of all right, duty, and property, has not been brought within the above doctrine. If it were, no one could trust his property, of any kind, in the hands of another. The doctrine is familiar, that he that has no title, can give none. And the note cited in 1 Am. Lead. Cas. 556, says, "But of other property than negotiable instruments, possession is not a power of disposition." See also Chit. on Con. (4th Am. ed.) 178.

This case opens to us a field of discussion, and it is an inviting one ; but the time does not permit an indulgence in it. The argument is here brought directly to its point, and we arrive at the conclusion, that the Wilsons could not hold the warrant, were it now in their possession, and an action were instituted for it. But we are not aware of any rule of law, upon which it can be traced into the land. There is no trust between Fort and Wilson, and the latter has violated none. Had Skeel so located the warrant, the case would have presented a different aspect. But Wilson is liable for the value of the warrant, which, to prevent litigation and circuity of action, the court can inquire into.

The decree of the District Court is affirmed, so far as it denies a recovery of the land; but the decree is reversed, so far as to let the complainant in to a recovery of the value of the land warrant, and the said court is directed to inquire into that value, and to render a decree in favor of the complainant for such value and interest, from the time of purchase.